*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LISA MARIE NEILSON,

        Plaintiff,

v

BOARD OF STATE CANVASSERS, SECRETARY
OF STATE, and BUREAU OF ELECTIONS,

        Defendants,

and

BONNIE BOVEE,

        Amicus Curiae.

PUBLISHED
June 17, 2024

No.  371256

Before:  PATEL, P.J., and YATES and FEENEY, JJ.

YATES, J. (concurring).

        I join the majority opinion because it faithfully applies Michigan law to reach the correct result in this case, but I write separately to express my concern that contests for vacant judgeships all too often have turned into the Hunger Games.  After judicial candidates conscientiously gather the requisite number of petition signatures and file their affidavits and other necessary paperwork, they turn on their opponents by trying to disqualify enough of their competitors to leave standing as few certified candidates as there are vacant judgeships.  The results of such efforts can deprive voters of any meaningful choice for judgeships and almost certainly discourage aspiring judicial candidates from running for office.  Surely these outcomes are not what the electorate and the legal profession want or need.

        To maintain a talented, engaged, committed judiciary, we ought to ensure that filing to run for a judgeship is not a daunting task.  Yet the intricacies of filing requirements have recently been exploited in efforts to disqualify candidates for judicial office for prefilling dates on petition sheets, *Johnsen v Bd of State Canvassers*, opinion of the Court of Claims, issued June 6, 2024 (Case No. 24-000080-MB), for failing to change the headings on petition sheets after a sitting judge did not

-1-

timely file paperwork to run for reelection, *Ruggirello v Benson*, opinion of the Court of Claims, issued June 11, 2024 (Case No. 24-000081-MB), and for following instructions on an "Incumbent Judicial Affidavit of Identity and Affidavit of Candidacy" by inserting the word "STATE" instead of the name of a county in response to the check-box statement that "I previously ran in Michigan for an office that required filing reports under the Michigan Campaign Finance Act. I ran in the following counties _____"

I find no fault with the highly skilled attorneys who represent candidates for mastering the details of election laws and using that knowledge to challenge judicial aspirants who unwittingly fail to comply with the Byzantine filing requirements. But I lament the willingness of candidates for judicial office to try to disqualify their opponents by flyspecking their opponents' submissions and then launching challenges to their opponents before the Bureau of Elections, the Board of State Canvassers, and courts. Whether the challenges involve hand-to-hand combat undertaken in the candidates' own names or instead are conducted in the names of candidates' proxies who litigate candidate eligibility beyond all reason and at great expense, these challenges too often disqualify candidates who have garnered substantial backing in the form of thousands of legitimate petition signatures. And these challenges manifestly have a deeply chilling effect on potential candidates for vacant judgeships in future elections.

It has always been difficult to recruit highly qualified attorneys to run for judicial offices. Campaigning is time-consuming, expensive, and stressful. But it is becoming even more difficult to recruit candidates in the evolving environment where a run for a judgeship inevitably requires retention of an attorney steeped in election law to help navigate the pitfalls and traps in the filing requirements. The losers in this environment are the voters deprived of highly qualified judicial candidates and the legal profession that expects and deserves a first-rate judiciary. We can—and we must—do a better job of affording candidates for judicial offices relatively ready access to the ballot.

Commendably, the Secretary of State and the Bureau of Elections have attempted in recent election cycles to make the affidavit of identity and the affidavit of candidacy more manageable. But the challenges to judicial candidates will persist and, I fear, increase in volume unless the filing requirements prescribed by Michigan law are further simplified and clarified. I hope a collective effort to accomplish those goals will be undertaken before the election cycle in 2026. An effort of that nature is imperative if we want the best judiciary that we can have.

/s/ Christopher P. Yates

PATEL, P.J., and FEENEY, J., join concurrence.